# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2418

_____

Don Huizenga; Nancy Powell; Jim Bendtsen

*Plaintiffs - Appellants*

v.

Independent School District No. 11; Anoka Hennepin Education Minnesota,
(American Federation of Teachers Local 7007)

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 17, 2022
Filed: August 11, 2022
[Published]

_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Three Anoka County residents sued a school district and teachers' union about their union leave and reimbursement plan, alleging constitutional and statutory violations. The district court dismissed the case for lack of standing. The residents appeal. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

Don Huizenga, Nancy Powell, and Jim Bendtsen are residents and taxpayers in Anoka County, Minnesota. Anoka-Hennepin Education Minnesota (AHEM) is the collective-bargaining representative of the teachers at Independent School District No. 11 (ISD 11). Their agreement allows ISD 11 teachers to take paid union leave to work for AHEM. The union reimburses the district's costs for hiring substitutes, but not the (higher) pro rata cost of salaries and benefits for teachers on union leave.

Disagreeing with the teachers' alleged political and campaign advocacy during union leave, the residents sued the union and the school district under 42 U.S.C. § 1983, alleging a violation of the Free Speech Clause. *See Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018). The residents also allege violations of the Minnesota Constitution and the state Public Employee Labor Relations Act. The district court dismissed the federal claims for lack of standing, denying injunctive relief, and refusing supplemental jurisdiction of the state claims. The residents appeal, asking this court to reverse and to grant a preliminary injunction.

This court reviews de novo a dismissal for lack of standing. *Heglund v. Aitkin Cnty.*, 871 F.3d 572, 577 (8th Cir. 2017).

"Article III restricts federal courts to the resolution of cases and controversies." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008). The party invoking federal jurisdiction has the burden to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). For Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Generally, "[a]bsent special circumstances . . . standing cannot be based on a plaintiff's mere status as a taxpayer." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011). "[I]nterest in the moneys of the Treasury" does not

present "a 'judicial controversy' appropriate for resolution in federal court but rather a 'matter of public . . . concern' that could be pursued only through the political process." *Id.* at 135 (quoting *Frothingham v. Mellon*, 262 U.S. 447, 487-89 (1923) (decided with *Massachusetts v. Mellon*)). The residents assert standing under two exceptions to this rule.

## I.

The residents assert standing as state taxpayers under *Flast v. Cohen*, 392 U.S. 83 (1968). The same principles limiting federal taxpayer challenges are "equally true when a state Act is assailed." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006) (quoting *Doremus v. Board of Educ. of Borough of Hawthorne*, 342 U.S. 429, 434 (1952)). *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 613-14 (1989) (opinion of Kennedy, J.) (noting that the Court has likened state taxpayers to federal taxpayers for standing purposes) (citing *Doremus*, 342 U.S. at 434).

The Court in *Flast* held that a taxpayer has standing because the "Establishment Clause of the First Amendment does specifically limit the taxing and spending power" of Congress. *Flast*, 392 U.S. at 105. But *Flast* is a "narrow exception" to the "general rule against taxpayer standing." *See Bowen v. Kendrick*, 487 U.S. 589, 618 (1988). The Court and this court have never applied *Flast* to any alleged spending violations except those invoking the Establishment Clause. *See Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 609 (2007) (plurality opinion) (explaining that the Court has "declined to lower the taxpayer standing bar in suits alleging violations of any constitutional provision apart from the Establishment Clause.").

The residents do not claim a violation of the Establishment Clause. They seek to apply *Flast* to a First Amendment compelled-speech claim, but cite no supporting authority. "Federal appellate courts have followed the Supreme Court's lead in refusing to expand the exception adopted in *Flast*." *Tarsney v. O'Keefe*, 225 F.3d 929, 937 (8th Cir. 2000) (collecting cases). *See also Americans United for*

*Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 419-20 (8th Cir. 2007) (reiterating that *Flast* and *Doremus* exceptions for standing are limited to federal or state expenditures "contrary to the Establishment Clause").

Additionally, "*Flast* limited taxpayer standing to challenges directed 'only [at] exercises of congressional power.'" *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 479 (1982) (quoting *Flast*, 392 U.S. at 102). The residents here challenge spending that is not legislatively mandated, but comes from an agreement between AHEM and ISD 11. In *Hein* the plurality of the Court rejected standing for even an Establishment Clause claim when taxpayers "could cite no statute whose application they challenge." *Hein*, 551 U.S. at 607.

## II.

The residents allege municipal taxpayer standing. Municipal taxpayer standing arises from the "peculiar" relationship of taxpayers to their municipality, like that "subsisting between stockholder and private corporation." *Frothingham*, 262 U.S. at 487. Because municipal taxpayers have a "direct and immediate" interest in municipal expenditures, they "may sue to enjoin an illegal use of the moneys of a municipal corporation." *Id.* at 486. *See also DaimlerChrysler*, 547 U.S. at 349. To allege such standing: (1) "the plaintiff must actually be a taxpayer of the municipality that she wishes to sue"; and (2) "the plaintiff must establish that the municipality has spent tax revenues on the allegedly illegal action." *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 734 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 2583 (2021).

In the complaint the plaintiffs say each is a "Minnesota taxpayer and a resident of Anoka County, Minnesota within ISD 11," "pays taxes to both the State and to Anoka County which are allocated to ISD 11," and all are "taxpayers of . . . the School District."

-4-

Before the district court, the residents alleged they have municipal taxpayer standing as *Anoka County* taxpayers. The county allocates money to fund some of the school district's budget. This argument, as presented to the district court, does not establish the relationship between taxpayer and municipality required for municipal taxpayer standing. Status as a county taxpayer alone does not confer standing to sue a school district within the county any more than status as a state taxpayer confers standing to sue a department within the state. *See Booth v. Hvass*, 302 F.3d 849, 853 (8th Cir. 2002). As this court explained in *Booth*, "[t]he taxpayer base for state departments is the same as that of the state," and a taxpayer's "interest in the funds allocated to a state agency is similar, perhaps identical, to the taxpayer's interest in the general state treasury." *Id.* Thus, the more broadly shared interest in the larger entity could not support municipal taxpayer standing to sue the smaller entity. *See id.* By that logic, taxpayers of Anoka County may not sue a school district within a county where their interest in the school district's use of funds is identical to their interest in the county's use of funds.

On appeal, however, the residents contend that they do pay taxes to ISD 11, and thus have standing to sue as *ISD 11* taxpayers rather than Anoka County taxpayers. "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "In a facial attack, the court restricts itself to the face of the pleadings . . . ." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016).

"The standing inquiry is merely a threshold inquiry"; it does not present the "higher hurdles" of pleading a claim to relief on the merits under Federal Rule of Civil Procedure 12(b)(6). *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010). Pleading jurisdiction requires only "a short and plain statement of the grounds for the court's jurisdiction," while pleading the merits requires not just "a short and plain statement of the claim," but one that "show[s] that the pleader is entitled to relief." *Compare* Fed. R. Civ. P. 8(a)(2), *with* Fed. R. Civ. P. 8(a)(1). Thus, pleading Article III standing requires only "general allegations of injury,

causation, and redressability." *In re SuperValu, Inc.*, 870 F.3d 763, 769, 773 (8th Cir. 2017) (internal quotation marks omitted). This court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* As alleged in the complaint, the residents are "taxpayers of . . . the School District." Unlike Anoka County taxpayers residing outside the school district, the residents thus belong to a particular "taxpayer base" consisting of school-district residents with a special "interest in the funds allocated to" the school district. *See Booth*, 302 F.3d at 853.

Like the plaintiff in *Everson v. Board of Education of Ewing Township*, each resident here sued "in his capacity as a district taxpayer." *See* 330 U.S. 1, 3 (1947). The union dismisses the significance of *Everson*, noting that it did not discuss standing and suggesting it overlooked a potential jurisdictional defect. But the Supreme Court stated in *Doremus v. Board of Education* that "this Court found a justiciable controversy in *Everson*." 342 U.S. 429, 433-34 (1952). And although *Doremus* involved state taxpayer standing, that statement immediately followed the Court's reaffirmation of the doctrine of municipal taxpayer standing. *See id.* (citing *Frothingham*, 262 U.S. at 486, 488).

The residents adequately alleged they are school district taxpayers and identified a "municipal action" contributing to their injury. *See DaimlerChrysler*, 547 U.S. at 349. Specifically, that the school district "spend[s] tax revenues on the allegedly illegal action" because the collective-bargaining agreement requires it to provide up to 100 days of paid leave, and the union does not fully reimburse that expense. *See Protect Our Parks*, 971 F.3d at 734. Since the district court did not address the preliminary injunction factors, the "common approach is to remand for the district court to conduct the full analysis in the first instance." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 500 (8th Cir. 2013). This court declines to grant the requested injunction.

\* \* \* \* \* \* \*

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

_____