MAGILL, Circuit Judge,
dissenting.
Contrary to the majority’s assertion, the appellants’ standing claim does not require the court to “expand” the holding in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), because Flast is not applicable to this case. The taxpayers here are seeking declaratory and injunc-tive relief against, among others, the State of Minnesota, attempting to enjoin Minnesota from using state funds to pay for certain abortions for low income women. The majority’s analysis, while persuasive if this case involved federal taxpayer standing, is inapplicable to our case which involves state taxpayer standing. The distinction is important because standing in state taxpayer cases is not limited to cases involving Establishment Clause claims. Because the majority’s opinion fails entirely to recognize that parties may properly bring non-Establishment Clause claims un *940 der state taxpayer standing, I must respectfully dissent.
I.
The downfall of the majority’s analysis began when it examined what is clearly a case of state taxpayer standing under a line of cases that deal only with federal taxpayer standing. Respectfully, the majority erred when it focused its attention on Flast and asserted that it controlled this case. Flast involved an action to enjoin expenditure of federal funds for purchase of textbooks and other instructional materials for use in parochial schools. See id. at 85-86, 88 S.Ct. 1942. As many circuit courts have recognized, the test that Flast announced only applies to federal taxpayer cases; in other words, cases against the federal government. For example, part of the limitations that the Court imposed on “federal taxpayers” indicated that standing would only be found in suits alleging the “unconstitutionality [ ] of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution.” Id. at 102, 88 S.Ct. 1942. The other Supreme Court cases the majority relies on in rejecting appellants’ taxpayer status claims are similarly inapplicable to our case because they all involved issues of federal taxpayer standing. See Bowen v. Kendrick, 487 U.S. 589, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988) (involving a challenge to a federal grant program); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (involving a challenge to federal action); Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 94 S.Ct. 2925 (1974) (involving action against the Secretary of Defense); United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (involving an action against the Secretary of the Treasury).
The Supreme Court has not yet indicated what requirements must be met in state taxpayer standing cases, but every circuit court, including the Eighth, that has considered the issue has held that the principles of Doremus v. Board of Education, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), and not Flast, control state taxpayer standing. In Minnesota Federation of Teachers v. Randall, 891 F.2d 1354 (8th Cir.1989), the Eighth Circuit clearly indicated that Doremus controlled state taxpayer standing cases. In Randall, the issue was whether Doremus requires that a taxpayer must show an increased tax burden in order to have state taxpayer standing. See id. at 1356. The district court in Randall had recognized that under Flast only a disbursement of public funds was required but held that the injury analysis for state taxpayers was still analytically distinct. See id. The Eighth Circuit clarified Doremus, holding that Do-remus only requires a measurable expenditure of tax money to establish state taxpayer standing and noting that “Flast and Doremus are now relied on interchangeably where establishment clause violations are urged.” Id. at 1357.
Other courts that have considered the issue of what line of cases control state taxpayer standing have also indicated that Doremus controls. Colorado Taxpayers Union, Inc. v. Romer, 963 F.2d 1394 (10th Cir.1992), is one such case that carefully examines the issues involved in state taxpayer cases. In Colorado Taxpayers, after discussing Flast, the Tenth Circuit said that “[b]oth parties mistakenly rely on Flast to resolve whether appellants qualify for taxpayer standing in this case. Flast does not directly govern this appeal because it applies to federal taxpayer standing issues, not questions relating to standing for state taxpayers.” Id. at 1399. Instead, the court indicated that the principles of Doremus still apply to state taxpayer cases. See id. at 1399-1400.
Other circuits have agreed with the Tenth Circuit that Doremus controls state taxpayer cases. In Taub v. Kentucky, 842 F.2d 912 (6th Cir.1988), the Sixth Circuit indicated that “in those cases where viola *941 tion of the Establishment Clause is not alleged ... [i]n order to have standing, a state taxpayer must allege direct and palpable injury with sufficient specificity to meet the ‘good-faith pocketbook’ requirement of Doremus.” Id. at 918. See also Doe v. Madison Sch. Dist. No. 321, 177 F.3d 789, 793 (9th Cir.1999) (en banc) (noting that “[p]laintiff has challenged the use of municipal and state (rather than federal) tax revenues. That being so, [Dore-mus] controls the requirements for taxpayer standing in this case.”); Board of Educ. v. New York State Teachers Retirement Sys., 60 F.3d 106, 110 (2d Cir.1995) (indicating that Doremus controls state taxpayer cases).
II.
Although the circuits have affirmed the obvious, that Doremus, and not Flast, controls issues of state taxpayer standing, they have disagreed on the injury a state taxpayer must allege to establish standing. There are two different tests for standing. One test requires that the plaintiff show that her taxes have been increased by the alleged illegal activity and the other has no such requirement. With all due respect, the majority should have explicitly dealt with this difficult issue because the test that the Eighth Circuit adopts could be dispositive in this and other cases.
According to the Tenth Circuit, Dore-mus requires that state taxpayers satisfy the “good-faith pocketbook” requirement in order to have standing. See Colorado Taxpayers, 963 F.2d at 1399-1400. The “good-faith pocketbook” requirement mandates that “where an Establishment Clause violation is not asserted, a state taxpayer must allege that appropriated funds were spent for an allegedly unlawful purpose and that the illegal appropriations and expenditures are tied to a direct and palpable injury threatened or suffered.” Id. at 1401. The injury required for standing is not met merely by showing that funds were appropriated and spent for an unlawful purpose; it requires a showing that the illegal activity resulted in an increased tax burden. See id. at 1403. See also Board of Educ., 60 F.3d at 110 (agreeing with the Tenth Circuit test); Taub, 842 F.2d at 917-19 (same).
In contrast to the circuits mentioned above, the Ninth Circuit does not require that the taxpayer prove that her tax burden will be lightened by elimination of the questioned expenditure. In Hoohuli v. Ariyoshi, 741 F.2d 1169 (9th Cir.1984), the Ninth Circuit examined the issue of state taxpayer standing and concluded that the plaintiffs met the Doremus requirements. In Hoohuli, the plaintiffs, as state taxpayers, brought an action challenging a system established by the State of Hawaii that disbursed benefits to residents who had descended from aboriginal inhabitants of the islands. See id. at 1172. The Ninth Circuit announced a three-part test for state taxpayer standing: 1) taxpayer status; 2) the appropriation of monies from the state’s general funds; and 3) the spending of those funds for allegedly unlawful proposes. See id. at 1179-80. See also Cammack v. Waihee, 932 F.2d 765, 769 (9th Cir.1991) (stating that “Hoohuli, the leading case on this issue in the circuit, does not require that the taxpayer prove that her tax burden will be lightened by elimination of the questioned expenditure”). Based on its three-part test, the Ninth Circuit held that the plaintiffs had standing. First, each of the plaintiffs set forth his or her status as a taxpayer. See Hoohuli, 741 F.2d at 1180. Second, the taxpayers challenged the appropriation, transfer, and spending of taxpayers’ money from the general fund of the state treasury and claimed that their tax dollars were being spent on a program which disbursed benefits based on impermissible racial classifications. See id. Third, the plaintiffs’ pleadings “set forth with specificity amounts of money appropriated and spent for allegedly unlawful purposes.” Id.
It is unclear what test the Eighth Circuit has adopted. Both the Ninth and *942 Tenth Circuits believe that our decision in Randall adopted the Ninth Circuit test. See Colorado Taxpayers, 963 F.2d at 1400 (stating that “[t]he Eight Circuit, in [.Randall ], agreed with the Ninth Circuit’s approach to state taxpayer standing”); Cammack, 932 F.2d at 769 (citing Randall as following the Ninth Circuit’s approach). However, it could be that the Randall court intended to limit its holding to Establishment Clause claims. Randall involved an Establishment Clause claim which both the Tenth Circuit, see Colorado Taxpayers, 963 F.2d at 1401, and the Sixth Circuit, see Taub, 842 F.2d at 917, have indicated, unlike non-Establishment Clause claims, do not have to meet the usual state taxpayer requirement of showing an increased tax burden due to the illegal activity.
The Ninth Circuit’s test is persuasive and it very well may be that the court in Randall adopted it for all state taxpayer eases. However, in light of the majority’s refusal to join the debate, it seems fruitless for me at this time to give an opinion on which test the Eighth Circuit has or should adopt, whether the plaintiffs in this case have satisfied the requirements of the appropriate test, and, if not, whether their suit should be dismissed or remanded.
III.
The majority’s failure to properly distinguish between state and federal taxpayer standing has led it to the erroneous conclusion that because the plaintiffs in this case allege non-Establishment Clause claims,[7] they automatically do not have standing. While perhaps true in federal taxpayer cases, a cursory review of state taxpayer cases shows that state taxpayers have standing for any claim as long as they meet the requirements of Doremus. In this case, as in Colorado Taxpayers, both parties may have mistakenly relied on Flast to resolve whether appellants qualify for taxpayer standing. However, ignorance by parties should not carry over to this court. This case should be decided through a proper consideration of the relevant cases and issues. By conflating federal and state taxpayer standing, the majority has failed to discuss the difficult issues of state taxpayer standing raised in this appeal. Accordingly, I dissent.

. It almost goes without saying that courts have never considered state, unlike federal, taxpayer standing to be limited to Establishment Clause claims. See, e.g., Board of Educ., 60 F.3d at 109 (involving a claim that the state violated the Contracts Clause of the Constitution and violated the Due Process Clause of the Fourteenth Amendment); Colorado Taxpayers, 963 F.2d at 1395 (involving a First Amendment free speech claim); Taub, 842 F.2d at 914 (involving an allegation that certain actions of Kentucky violated Article I, Section 10 and the Fifth and Fourteenth Amendments); Hoohuli, 741 F.2d at 1172 (involving a discrimination claim under the Fourteenth Amendment).